**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| PATRICE YOUNGBLOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.: 3:22-cv-02822 |
| v. ) | |
| ) | |
| MENARD, INC., ) | |
| ) | |
| Defendant. ) | |

**RESPONSE TO MOTION TO ADJUDICATE CLAIM OF ATTORNEY-CLIENT PRIVILEGE**

NOW COMES Defendant, Menard, Inc., by and through Christopher A. Koester of Taylor Law Offices, P.C., its attorney, and as and for its Response to Plaintiff's Motion to Adjudicate Claim of Attorney-Client Privilege, states:

## I. Introduction

Plaintiff contends that Ms. Houghland should not have the ability to assert attorney-client privilege as to her communications with undersigned counsel to prepare for her deposition in this matter. Plaintiff further contends that undersigned counsel should not be able to represent a defendant and a non-party deponent. Illinois law explicitly controverts Plaintiff's position on both counts, and Plaintiff has provided nothing but non-binding, out-of-state authorities in support of Plaintiff's positions. Respectfully, Plaintiff's request that this Court declare that no attorney-client relationship exists between defense counsel and Ms. Houghland should be denied, along with all other requests for relief related to this Motion.

## II. Argument

    **a. Counsel represented Menard employee individually in connection with her deposition, and therefore the corporate control group analysis does not apply.**

1

In Plaintiff's Motion, Plaintiff argues that defense counsel cannot serve as personal counsel for an employee. However, Illinois law explicitly allows such representation. As Plaintiff points out in her Motion, the First District Appellate Court in Illinois considered this issue in *Buckman v. Columbus-Cabrini Med. Ctr.*, 272 Ill. App. 3d 1060 (1995), and specifically ruled that defense counsel could serve as personal counsel for an employee of the defendant during that employee's deposition.

In this case, Plaintiff is seeking the content of communications between undersigned counsel and Jodi Houghland during a meeting on February 15, 2024, that occurred at Taylor Law Offices in anticipation of Ms. Houghland's deposition which took place on February 22, 2024. Plaintiff concedes that an attorney-client relationship was established between undersigned counsel and Ms. Houghland at the February 15, 2024, meeting. However, Plaintiff argues that any claim of privileged communications between undersigned counsel and Ms. Houghland is "not supported by law and was manufactured to obstruct the free flow of information." Plaintiff acknowledges the existence of the *Buckman* case which explicitly authorizes attorney-client privileged communications in cases like this one, but argues it is not "well-reasoned," despite it being binding authority. Plaintiff correctly identifies that Federal Rule of Evidence 501 states in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision. Therefore Illinois law, and by extension, the *Buckman* case, controls whether attorney-client privilege can be asserted for communications between undersigned counsel and Ms. Houghland on February 15, 2024, in preparation of her deposition in this case. Plaintiff has not cited any other Illinois authority that reaches a contrary decision to *Buckman*, and therefore the ruling in *Buckman* should be applied to this case.

It is necessary to outline the facts in both the *Buckman* case and this one to highlight the similarities. In this case, Plaintiff subpoenaed Jodi Houghland, then an employee of Menard, Inc., for her discovery deposition to take place on February 22, 2024. Sometime after receiving the Notice of Deposition and before the meeting at Taylor Law Offices, Ms. Houghland met with her manager, whom directed her to see undersigned counsel. (Jodi Houghland Deposition Transcript 8:22-9:4). Ms. Houghland met with undersigned counsel on February 15, 2024. *Id*. at 9:21-10:3. Prior to the visit starting, an attorney-client relationship between undersigned counsel and Ms. Houghland was created. *Id.* at 10:11-14. Undersigned counsel appeared on behalf of Ms. Houghland at her deposition on February 22, 2024.

In *Buckman*, in the underlying case, plaintiff filed suit against the Medical Center, Katie Austin, R.N., and Kevin Finkle, M.D. *Buckman v. Columbus-Cabrini Med. Ctr.*, 272 Ill. App. 3d 1060, 1061 (1995). During discovery of the underlying case, plaintiff subpoenaed Ms. Boonie Saeng-Mani for her discovery deposition. *Id*. Ms. Saeng-Mani was employed by the Medical Center as a part-time nurse in the intensive care unit but was not a named defendant or a member of the control group of the Medical Center. *Id*. After being subpoenaed for her deposition, Ms. Saeng-Mani went to the Medical Center, which directed her to Medical Center's counsel in the underlying litigation. *Id*. at 1061-62. Ms. Saeng-Mani later met with the Medical Center's attorney, who appeared on her behalf at her deposition. *Id*. at 1062. In response to questions from plaintiff's counsel at Ms. Saeng-Mani's deposition, it was communicated to plaintiff's counsel that communications between the attorney representing Ms. Saeng-Mani at her deposition and Ms. Saeng-Mani were protected by the attorney-client privilege. *Id.* The plaintiff filed a motion to compel communications between the attorney and Ms. Saeng-Mani, arguing that because Ms. Saeng-Mani was not a party to the litigation, and was not part of the Medical Center's control

3

group, the communications between Ms. Saeng-Mani and the attorney were not protected by attorney-client privilege. *Id*. The trial court granted the plaintiff's motion to compel in part. The attorney for Ms. Saeng-Mani appealed. On appeal, the attorney for Ms. Saeng-Mani argued that the communications between him and Ms. Saeng-Mani were subject to the attorney-client privilege because the communications were made while he was acting in his capacity as Ms. Saeng-Mani's attorney. *Id*. at 1064. Buckman further argued that the control group analysis was not applicable because Ms. Saeng-Mani was not a corporate claimant to whom the control group applies. *Id*. at 1065. The appellate court ruled as follows:

> For the following reasons, we conclude that the memoranda at issue are protected by the attorney-client privilege because the record establishes the existence of an attorney-client relationship between contemnor-appellant and Ms. Saeng-Mani when the relevant communications were made.
>
> In the present case, the record reveals that when Ms. Saeng-Mani was subpoenaed for a deposition in connection with the instant litigation, she went to the Medical Center which, in turn, directed her to contemnor-appellant. After meeting with contemnor-appellant, contemnor-appellant appeared on behalf of Ms. Saeng-Mani at her deposition in connection with the instant case. These circumstances establish that Ms. Saeng-Mani received legal advice and services. As such, we conclude that the trial court erred in determining that the relevant communications between contemnor-appellant and Ms. Saeng-Mani are not protected by the attorney-client privilege. *Id*. at 1066.

The facts in this case and in the *Buckman* case are almost identical. Plaintiff concedes that the *Buckman* case is controlling authority and does not argue that *Buckman* is distinguishable from this case, but merely argues that the *Buckman* case is not "well-reasoned." There is no sufficient basis for this Court to entertain Plaintiff's invitation to disregard Illinois law on whether the attorney-client privilege applies to this set of facts or not, and the Plaintiff's Motion should be denied.

  b. **No solicitation under the Illinois Rules of Professional Conduct occurred, and therefore any solicitation discussion is extraneous and superfluous to this Motion.**

  Plaintiff spends a significant amount of time discussing Illinois Rule of Professional Conduct 7.3, solicitation, and whether undersigned counsel solicited the representation of Ms. Houghland. In fact, Plaintiff explicitly alleges that "[i]n this case defense counsel solicited the representation" without any factual underpinning to support the claim. Plaintiff cites Ms. Houghland's deposition testimony beginning at page 10, line 1, through page 13, line 3. However, there is no testimony or evidence in the transcript that supports a finding or inference that defense counsel solicited Ms. Houghland as a client. There is no evidence in the record that undersigned counsel ever communicated with Ms. Houghland regarding representation prior to the meeting on February 15, 2024. There is no evidence that undersigned counsel solicited professional employment in violation of either subsection (a) or (b) of Illinois Rule of Professional Conduct 7.3. The case cited by Plaintiff in support of her position, *In re Komar*, has no factual similarity to this case and should be disregarded. *In re Komar*, 125 Ill.2d 427 (1988). In that case, the Complaint stated that the attorney at issue owned 25% interest in corporations which sent solicitations to owners of single-family dwellings which were the subject of pending mortgage foreclosure actions to provide financial services, including retaining counsel to determine the status of the foreclosure. The attorney at issue performed those services, was compensated for doing so, and did not disclose to those being solicited that the attorney had an ownership interest in the corporations sending the written solicitations. *Id*. at 428-29. The *Komar* case is completely irrelevant and inapposite to this case.

  In addition, Plaintiff gives considerable discussion to the *Aspgren v. Montgomery Ward & Co., Inc.* case, which warrants some fleshing out by the Defendant. In *Aspgren*, the law firm of

5

Steptoe and Johnson ("Steptoe") represented defendant. *Aspgren v. Montgomery Ward & Co., Inc.*, 1984 WL 490011 at 1, Not Reported in F. Supp. (N.D. Ill. 1984). Discovery in that case included over 200 depositions, including former employees of defendant. *Id*. The arrangement for setting up those depositions included plaintiffs' counsel advising Steptoe when they wanted to take the depositions, and then Steptoe contacting the former employees directly to make those arrangements. *Id*. When Steptoe reached out to the deponents, Steptoe advised they would represent the deponent free of charge. *Id*.

When the trial court made its decision on the solicitation issue in the *Aspgren* case, it specifically stated:

> Before the court explains the basis for its remedy, it observes that there is no hint that Steptoe committed an ethical violation by soliciting business from any particular deponent. The circumstances surrounding its contact with the deponents is closely tied to its representation of Ward. Understandably, Steptoe and a deponent might assume that Steptoe would attend the deposition on the deponent's behalf. This order is a precaution against the possibility that the peculiarities of this case will injure a deponent who may wish independent counsel. *Id*. at 2.

The trial court further stated the following:

> This opinion and order reaches no conclusion about Steptoe's prior conduct. The evidence in the record is insufficient to conclude that Steptoe's presentation to the former employees constituted solicitation. The order merely protects the former employees from the dangers posed by potential solicitation in the future. *Id*. at 5.

The *Aspgren* case is distinguishable in several respects from this case. First, Steptoe reached out to the deponents personally and advised them that Steptoe would represent them free of charge. Of course, that did not happen here. Second, a concern in the *Aspgren* case was that the deponents were former employees that could have ended up as plaintiffs in the same case. Therefore, Steptoe agreeing to represent them in connection with representation of the defendant in the underlying case could have created a conflict of interest. Neither of those facts are present in our case.

There is one point of similarity between the *Aspgren* case and our case. In *Aspgren*, plaintiffs argued that Steptoe's representation of the deponents would prevent plaintiffs from obtaining information from those witnesses. Similarly here, Plaintiff is arguing that undersigned counsel's representation of Ms. Houghland is preventing Plaintiff from obtaining information from Ms. Houghland relevant to the case. But as the court in *Aspgren* pointed out, this is just not true. The court stated:

> Plaintiffs' first objection – that Steptoe's conduct improperly insulates the deponents from plaintiffs' counsel – fails to justify judicial action. Defendants and plaintiffs both enjoy the right to approach prospective witnesses and interview them if the witnesses agree to the interviews. If a witness, for whatever reason, declines the interview, defendants and plaintiffs have the power to conduct a deposition. Plaintiffs failed at the hearing to identify any particular case in which Steptoe used its contact with a deponent to frustrate plaintiffs' discovery. Plaintiffs never claimed that Steptoe counseled the deponents to lie or destroy evidence. *Id*. at 2.

In this case, Plaintiff contends that defense counsel's conduct creates a "zone of silence" around Menard employees which prevents Plaintiff from obtaining facts and information relevant to the case. Plaintiff was able to take Ms. Houghland's deposition, the transcript of which was 50 pages long. The only questions arguably about the substance of the litigation presented to Ms. Houghland to which she was instructed not to answer by undersigned counsel were: (1) A question asking what Ms. Houghland was told about the allegations of the lawsuit by undersigned counsel during the February 15, 2024, meeting (Deposition of Jodi Houghland, 10:3-8), and (2) what else undersigned counsel told Ms. Houghland at their February 15, 2024, meeting (Deposition of Jodi Houghland, 10:19 – 11:3). Plaintiff's counsel never asked Ms. Houghland what documents were reviewed, if any, to prepare for the deposition. Plaintiff cannot point to any specific documentation or information that Plaintiff is unable to access as a result of the assertion of attorney-client privilege between undersigned counsel and Ms. Houghland. As a result, this Court should make the same finding as the *Aspgren* court did – that simply representing a deponent during their

7

deposition does not impede the parties from utilizing the discovery process and finding out relevant information that each potential witness has to offer.

### III. Conclusion

Because Plaintiff has cited no Illinois authority, binding or persuasive, in support of Plaintiff's Motion, it should respectfully be denied. Illinois law is clear that attorneys may represent a defendant and a non-party deponent. Because of the law's clarity, any other relief sought from Plaintiff regarding an unsupported assertion of a conflict of interest or solicitation should be disregarded and denied by this Court.

Respectfully submitted,

MENARD, INC., Defendant,

By: */s/ Christopher A. Koester*

CHRISTOPHER A. KOESTER (#6208370)
of TAYLOR LAW OFFICES, P.C.
Attorney for Defendant
122 East Washington Avenue
Effingham, Illinois 62401
(217) 342-3925
koester@taylorlaw.net

8

## CERTIFICATE OF SERVICE

The undersigned certifies that on **April 29, 2024,** the foregoing document was electronically filed and served upon all parties of record through the U.S. District Court's CM/ECF system.

*/s/ Christopher A. Koester*

**SERVICE LIST:**
Larry Darr
Darr Law Offices, Ltd.
307 Henry St.
Suite 406
Alton, IL 62002
darr@darrfirm.com